# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| MICHAEL MORTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:23-cv-01320-GMN-DJA |
| vs. | ) | |
| | ) | **ORDER GRANTING** |
| ROCKY MOUNTAIN HOSPITAL AND | ) | **MOTION TO DISMISS** |
| MEDICAL SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 4), filed by Defendant Rocky Mountain Hospital and Medical Services doing business as Anthem Blue Cross and Blue Shield, ("Anthem"). Plaintiff Michael Morton filed a Response, (ECF No. 12), to which Defendant filed a Reply, (ECF No. 14). Further pending before the Court is Plaintiff's Conditional Motion to Amend Complaint, (ECF No. 13). Defendant filed a Response, (ECF No. 15), to which Plaintiff filed a Reply, (ECF No. 16).

Because Plaintiff's state law claims are preempted by federal law, the Court **GRANTS** Defendant's Motion to Dismiss, provides Plaintiff leave to amend, and **DENIES as moot** Plaintiff's Motion to Amend.

## I.    BACKGROUND

This case arises from Anthem's allegedly improper denial of Plaintiff's authorization request for disc arthroplasty surgery. (*See generally* Compl., ECF No. 1-1). After experiencing an adverse neck condition, Plaintiff's physician recommended that he undergo total disc arthroplasty surgery. (*Id.* ¶¶ 8–10). A request for authorization was submitted to Anthem on behalf of Plaintiff, but Anthem denied the request on the grounds that the surgery was not medically necessary. (*Id.* ¶ 15). Plaintiff appealed Anthem's decision, but it remained

unchanged. (*Id.* ¶¶ 17–18).  Nonetheless, Plaintiff went forward with the surgery and paid expenses exceeding $50,000. (*Id.* ¶ 21).

Plaintiff brought six claims in state court: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious breach of the implied covenant of good faith and fair dealing, (4) breach of fiduciary duty, (5) violation of the Unfair Claims Practices Act under NRS Chapter 686A, and (6) declaratory relief. (*Id.* ¶¶ 23–56).  Plaintiff's Complaint contained a footnote stating, "In the event ERISA applies in this matter, then the claims asserted herein should be deemed ERISA claims." (*Id.* ¶ 2 n.2).  Anthem removed to federal court based on its argument that all or some of Plaintiff's claims were preempted by the Employee Retirement Income Security Act of 1974, ("ERISA"). (Pet. Removal 1:23–26, ECF No. 1).  Shortly thereafter, Anthem filed the instant Motion to Dismiss, arguing that Plaintiff's claims are completely and expressly preempted by ERISA. (*See generally* Mot. Dismiss, ECF No. 4).

## II.   **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

1 | misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant
2 | has acted unlawfully." *Id.*

3 | **III.   DISCUSSION**

4 |      Anthem moves to dismiss on the grounds that Plaintiff's state law causes of action are
5 | preempted by ERISA under Sections 502(a)(1)(B) and 514. (*See generally* Mot. Dismiss).  The
6 | parties disagree on whether Plaintiff's Health Plan is governed by ERISA, and if so, whether
7 | Plaintiff's state law claims are preempted.  The Court will first address whether ERISA governs
8 | the Health Plan, and then whether Plaintiff's claims are completely preempted under Section
9 | 502(a)(1)(B) or expressly preempted under Section 514.

10 |     **A. ERISA Governs the Health Plan**

11 |      As an initial matter, the Court incorporates two documents by reference: the applicable
12 | Group Health Plan Contract between Anthem and Plaintiff's employer, La Cave, and Plaintiff's
13 | Certificate of Coverage. (*See* Group Health Plan, Ex. 1-A to Mot. Dismiss, ECF No. 4-3);
14 | (Cert. Coverage, Ex. 3-A to Pet. Removal, ECF No. 1-5).  The "incorporation by reference"
15 | doctrine allows a court deciding a Rule 12(b)(6) motion to consider documents incorporated by
16 | reference, but not physically attached to the complaint, if the documents are central to the
17 | plaintiff's claim and their authenticity is undisputed. *Marder v. Lopez*, 450 F.3d 445, 448 (9th
18 | Cir. 2006).  Here, the insurance policy documents form the basis of Plaintiff's claims, and he
19 | does not dispute their authenticity.

20 |      Plaintiff is unsure whether his health plan is governed by ERISA, and requests
21 | jurisdictional discovery for the purpose of determining this issue. (Resp. 3:4–4:18, ECF No.
22 | 12).  Anthem argues that the plan is governed by ERISA because it meets the definition of an
23 | "employee welfare benefit plan" as dictated by statute. (Reply 4:10–5:14, ECF No. 14).  The
24 | existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding

25 |

facts and circumstances from the point of view of a reasonable person. *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988).

An "employee welfare benefit plan" governed by ERISA is one established by an employer "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . . ." 29 U.S.C. § 1002(1). ERISA's provisions apply to any "employee benefit plan" that is "established or maintained . . . by an employer engaged in commerce or in industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). An ERISA plan enables reasonable people to "ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). "Very few offers to extend benefits will fail the test laid out in *Donovan*, which requires neither formalities nor elaborate details." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003).

Upon review of the Plan Contract, Certificate of Coverage, and the parties' arguments, the Court is persuaded that the plan is governed by ERISA and finds jurisdictional discovery unnecessary. Per the terms of the Plan Contract, "Group, [La Cave], has requested Anthem to provide health insurance coverage to its eligible employees." (Group Health Plan at 1, Ex. 1-A to Mot. Dismiss). Thus, the Plan meets the definition of an "employee welfare benefit plan" per 29 U.S.C. § 1002(1). Plaintiff's employer contracted to pay some percentage of its employees' premiums. (*Id.* at 1, 5). As further evidence, the plain language of the Plan Contract dictates that La Cave must comply with ERISA reporting requirements, and that the Contract will be governed by Nevada law "[e]xcept to the extent *preempted by ERISA*." (*Id.* at 2, 7) (emphasis added).

Additionally, page six of the Certificate of Coverage contains the "Statement of ERISA Rights," which apply to "employer sponsored plans other than Church employer groups and

government groups." (Cert. Coverage at 6, Ex. 3-A to Pet. Removal).  It explains the Group Member's rights under ERISA and informs each member that if their claim is denied, they "may file suit in a state or federal court." (*Id.* at 6–7).  Applying the *Donovan* test, the Court determines that Plaintiff's coverage documentation is sufficiently detailed such that a reasonable person could ascertain the benefits, beneficiaries, and procedure for receiving benefits.  In light of all the surrounding facts and circumstances, the Court finds this health plan to be governed by ERISA.

The Fifth Circuit case cited by Plaintiff does not persuade the Court otherwise.  Plaintiff relies on *Shearer v. Southwest Service Life Insurance Co.* for the proposition that an employer has not established or maintained a plan under ERISA simply by purchasing insurance for its employees, without taking additional actions such as purchasing premiums, administering the policy, or submitting claims. (Resp. 4:6–10) (citing *Shearer*, 516 F.3d 276, 279 (5th Cir. 2008)).  The employer in *Shearer* paid premiums on two separate policies for its two owners but did not provide insurance to other employees. *Id.* at 280.  The Fifth Circuit concluded that this was not sufficient evidence of the employer's intent to benefit its employees through health insurance. *Id.*  The Court differentiated these facts from previous cases in which the plans were purchased for all company employees, which indicated greater support to the existence of an ERISA plan. *Id.*

Here, Plaintiff does not allege that La Cave only pays premiums for a few employees or owners.  Instead, the Group Contract states that La Cave intended to provide health insurance for "eligible employees."  Unlike the employer in *Shearer*, Plaintiff's employer goes above and beyond merely purchasing insurance for its employees; La Cave also pays premiums, provides eligibility and administration information to Anthem, notifies eligible employees, distributes Plan documents, and submits requests for benefits changes to Anthem. (Group Health Plan at 3–5, Ex. 1-A to Mot. Dismiss).  The Group Health Plan is thus governed by ERISA.

**B. Preemption**

Defendant argues that Plaintiff's claims are preempted through the complete preemption of § 502(a), as well as the express preemption of § 514(a).  "There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in [ERISA § 502(a),] 29 U.S.C. § 1132(a)." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (citing *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)).  "A state cause of action that would fall within the scope of this [502(a)] scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)." *Cleghorn*, 408 F.3d at 1225.  While claims are completely preempted under § 502(a) if they conflict with the intended exclusive remedial scheme of ERISA, claims are expressly preempted under § 514(a) if they may "now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a).

**1. Complete Preemption**

The Court begins with Defendant's argument for complete preemption under § 502(a) of ERISA, 29 U.S.C. § 1132(a).  Section 502(a)(1)(B) allows participants or beneficiaries to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Therefore, "if an individual brings suit complaining of a denial of [benefits], where the individual is entitled to such [benefit] only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)); *see also Metro. Life*, 481 U.S. at 65–66 (noting that section 502(a)(1)(B) of ERISA contains "extraordinary pre-emptive power" that "converts

an ordinary state common law complaint into one stating a federal claim," making "causes of action within the scope of . . . § 502(a) . . . removable to federal court").

Although Plaintiff does not allege a federal claim, complete preemption is an exception to the general rule that removal is improper when the complaint does not explicitly allege a federal claim. *Rudel v. Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262, 1269 (9th Cir. 2019). Defendant, as the removing party, bears the burden to prove that complete preemption by § 502(a) applies here. *see, e.g., Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998). Because "a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive," *Davila*, 542 U.S. at 214 n.4, "[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort," *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001).  Complete preemption by § 502(a) exists if two prongs are satisfied: (1) the plaintiff, at some point in time, could have brought their claim under § 502(a); and (2) the defendant's actions do not implicate any other independent legal duties. *Rudel*, 937 F.3d at 1271.

Turning to the first prong, a plaintiff could have brought their claim under § 502(a) when the plaintiffs "complain only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." *Davila*, 542 U.S. at 211.  After reviewing each of Plaintiff's state-law causes of action, the Court finds that the first prong is met because they are each premised on Anthem's denial of coverage and thus could have been brought under § 502(a).  The second prong of the test is also met as to all of Plaintiff's claims because Anthem's only legal duty to Plaintiff is based on its position as his health insurer.

Plaintiff's first two claims, breach of contract and contractual breach of the implied covenant of good faith and fair dealing, are preempted under § 502(a).  These claims are based solely on Anthem's failure "to provide appropriate insurance coverage benefits." (Compl.

¶¶ 28, 33).  Because Plaintiff seeks only to rectify a wrongful denial of benefits, these claims fall within the scope of 502(a).  *See Davila*, 542 U.S. at 214.  "[S]tate common law causes of action arising from the improper processing of a claim are preempted by federal law."  *Kanne*, 867 F.2d at 493.

Plaintiff's third claim, tortious breach of the implied covenant of good faith and fair dealing, does not avoid preemption simply because it is labeled as a tort claim rather than a contract claim.  *See Davila*, 542 U.S. at 214 (explaining that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract.'") (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).  The basis of this claim is the same as Plaintiff's contract claims: that Anthem breached the implied covenant of good faith and fair dealing by failing to provide insurance benefits or authorize and pay for Plaintiff's surgery. (Compl. ¶ 39).  Although Plaintiff requests punitive damages because the conduct was allegedly "knowing, intentional, oppressive, malicious," and "done in conscious disregard" to his rights, alleging remedies beyond those provided in ERISA § 502(a) does not automatically put the cause of action outside the scope of ERISA's enforcement mechanism.  *See Davila*, 542 U.S. at 214–15; *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136 (1990) (holding that claims brought under various tort and contract theories, and requesting punitive damages, were still preempted by ERISA).

Plaintiff's fourth claim for breach of fiduciary duty is also preempted.  Plaintiff alleges that Anthem, as a plan fiduciary, breached its fiduciary duty. (Compl. ¶ 44).  Plaintiff does not include factual allegations as to why or how the duty was breached.  Nonetheless, to the extent his breach of fiduciary duty claim is based on Anthem's denial of benefits under the Plan, it is preempted.  An "alleged breach of fiduciary duty while administering the benefit plan is

conduct covered by ERISA." *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1008 (9th Cir. 1998); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (holding that state law claims for tortious breach of contract, breach of alleged fiduciary duties, and fraud are preempted by ERISA).

Plaintiff's claim for a violation of the Unfair Claims Practices Act is further preempted by ERISA to the extent it is based on Anthem's denial of Plaintiff's benefits under the Plan. The Nevada Supreme Court, and other courts in this district, have found that ERISA preempts a private right of action for violation of NRS 686(A) when based on the denial of benefits. *See, e.g.*, *Miller v. Nat'l Brokerage Servs., Inc.*, 782 F. Supp. 1440, 1444 (D. Nev. 1991); *Villescas v. CAN Ins. Companies*, 864 P.2d 288, 294 (Nev. 1993).

Finally, Plaintiff's sixth claim, declaratory relief, asks the court to determine the appropriate scope of insurance coverage benefits. A plan beneficiary's action to recover the benefits of his plan, or to clarify his rights to future benefits under the plan, is cognizable under ERISA. Plaintiff's claim is not independent of his claim for benefits under his plan and is therefore preempted. *See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1086 (C.D. Cal. 2011) (explaining that to the extent the plaintiff's declaratory relief claim seeks to recover under the plan, or seeks a declaration as to who is responsible for compensation, the claim is preempted by ERISA). The Court concludes that Plaintiff's state claims are "within the scope of" ERISA § 502(a)(1)(B) and are therefore completely preempted.

## 2. Express Preemption

In addition to the complete preemption due to Plaintiff's claims conflicting with ERISA's remedial scheme, Defendant also argues that Plaintiff's claims are expressly preempted. Claims are expressly preempted under § 514(a) if they may "now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). The Supreme Court has interpreted the phrase "relate to" broadly, such that a state-law claim is related to an employee

benefit plan "if it has a connection with or reference to such a plan." *Pilot Life*, 481 U.S. at 47 (internal quotation marks and citation omitted).  In *Pilot Life*, the Court held that the plaintiff's state common law claims for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement were expressly preempted by ERISA because they arose from the insurer's denial of benefits. *Id.* at 43, 48.

The Court must reach the same result in this case.  Plaintiff's claims do not simply have a connection to the Group Health Plan; they are entirely based on Anthem's denial of benefits under the Plan.  Section 514 preempts state law claims including breach of contract and breach of the implied duty of good faith and fair dealing when the claims are directly related to the administration of an ERISA plan. *Bast*, 150 F.3d at 1007–08.  Similarly, in *Pilot Life*, the Supreme Court held that a common law claim "based on [an] improper processing of a claim for benefits under an employee benefit plan . . . undoubtedly meet[s] the criteria for pre-emption under § 514(a)." *Pilot Life*, 481 U.S. at 47–48.  Because Plaintiff's state-law claims relate to Anthem's alleged improper processing of his claim for benefits, § 514(a) expressly preempts his state-law claims.

### 3.  The Savings Clause Does Not Apply

Lastly, Plaintiff argues that even if ERISA § 514(a) preempts his state law claims generally, his claims may be exempted by the Savings Clause, which allows enforcement of state laws regulating insurance, even if they would otherwise be preempted. (Resp. 4:19–24). Defendant responds that the ERISA Savings Clause does not apply to this case because Plaintiff's common law state claims are not "specifically tailored by the state to regulate insurance," and because the Nevada Supreme Court has held that Nevada's Unfair Claims Practices Act is not within the scope of the Savings Clause. (Reply 2:6–11).  Defendant is correct.

"Although the ERISA preemption clause is broad, Congress created an exception for 'any law of any State which regulates insurance, banking, or securities.'" *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 132 (9th Cir. 1993) (citing 29 U.S.C. § 1144(b)(2)(A)). "A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life*, 481 U.S. at 50. For example, in *Pilot Life*, the United States Supreme Court explained that the Mississippi law of bad faith did not fall under the Savings Clause because the roots of the law were "firmly planted in the general principles of Mississippi tort and contract law." *Id.* The Court explained that "[a]ny breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law." *Id.*

The Savings Clause does not apply in this case because none of Plaintiff's state law claims are premised on a Nevada law specifically directed to regulate insurance. Plaintiff's state common law claims for breach of contract, contractual and tortious breaches of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and declaratory relief apply to any contract, not just an insurance contract. And Plaintiff's Response makes no argument that any of these laws are specifically directed towards the insurance industry. As for his claim brought under Nevada's Unfair Claims Practices Act, Defendant correctly points out that the Nevada Supreme Court has expressly held that this claim is preempted by ERISA when applied to an ERISA plan. *Villescas*, 864 P.2d at 294. Therefore, the Savings Clause does not avoid preemption in this case, and the Court GRANTS Defendant's Motion to Dismiss.

### 4. Leave to Amend

Plaintiff's suit is entirely premised on Anthem's denial to cover the cost of his neck surgery, which he alleges was medically necessary. Thus, because Plaintiff's suit centers on his desire "to recover benefits due to him under the terms of his plan" under Section 502(a) of

ERISA, the Court allows Plaintiff 21 days to amend his Complaint. *See Cleghorn*, 408 F.3d at 1225 (citing 29 U.S.C. § 1132(a)).  But "[e]xtracontractual, compensatory and punitive damages are not available under ERISA." *Bast*, 150 F.3d at 1009 (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)).  Accordingly, the Court DENIES Plaintiff leave to amend his claim for extracontractual damages.  Because the Court provides Plaintiff leave to amend, his Conditional Motion to Amend is DENIED as moot.

**IV.**               **CONCLUSION**

        **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 4), is **GRANTED**.  Plaintiff shall have 21 days from the date of this Order to file an amended complaint.  Failure to file an amended complaint by this date will result in the Court dismissing Plaintiff's claims with prejudice.

        **IT IS FURTHER ORDERED** that Plaintiff's Conditional Motion to Amend, (ECF No. 13), is DENIED as moot.

        **DATED** this  21   day of May, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

Page 12 of 12