UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Michael Morton, | Case No. 2:23-cv-01320-GMN-DJA |
| Plaintiff, | |
| v. | **Order** |
| Rocky Mountain Hospital and Medical Services, Inc. dba Anthem Blue Cross and Blue Shield, | |
| Defendant. | |

This is an ERISA case in which Plaintiff Michael Morton alleges that Defendant Rocky Mountain Hospital and Medical Services, Inc. dba Anthem Blue Cross Blue Shield ("Anthem") erroneously denied his request for authorization to undergo spine surgery. Morton sues Anthem for damages, alleging one claim for recovery of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 27). Both Morton and Anthem move the Court to decide the standard of review applicable to deciding Morton's claim. (ECF No. 41) (Anthem's motion); (ECF No. 45) (Morton's motion); (ECF No. 47) (Morton's sealed motion). Morton also moves to seal an erratum to his motion and his reply in support of his motion. (ECF No. 53) (motion to seal erratum); (ECF No. 55) (motion to seal reply).

Because the Court finds that it cannot decide the standard of review at this stage, it denies the motions to determine the standard of review and orders the parties to undergo limited discovery related to the standard of review. Because Anthem has made the confidentiality designations over the documents Morton seeks to seal, but has not filed a declaration supporting their sealing, the Court will deny the motions to seal and will keep the documents sealed for thirty more days so that Anthem may move to seal them. And because the Court declines to decide the standard of review, the Court will alter the parties' scheduling order to set concrete deadlines for forthcoming briefing.

## I. Background.

Morton has a history of cervical spine problems. (ECF No. 45 at 2). In 2012, he underwent a two-level spinal fusion surgery at levels C5-C7. (*Id.*). When he began experiencing new problems at C4-C5, his doctor—Dr. Daniel C. Lu, a spinal surgeon based at the UCLA Department of Neurology—recommended that Morton undergo an Artificial Disc Replacement to address the deteriorated disc at level C4-C5. (*Id.* at 3). Morton's records were submitted to Anthem in May of 2022, to obtain approval for the procedure. (*Id.*). On May 11, 2022, Anthem denied the claim, stating:

> Your doctor wants you to have surgery to remove a gel pad between your neck bones and replace it with a new gel pad. We reviewed the notes we received. The notes show that you had neck surgery in the past. The surgery in the past joined the bones in your neck. You cannot have a gel pad replaced if your neck bones are joined together.

(*Id.* at 4).

Anthem asserts that an experienced health care professional performed the review of Morton's request. (ECF No. 41). Morton asserts that the claim letter fails to identify the person who made the decision, their qualifications, and the materials they considered. (ECF No. 45 at 2). Morton adds that the reason for the denial was factually incorrect because he sought surgery on a different part of the spine than where he received the spinal fusion. (*Id.* at 4). Morton received another denial letter the very next day, stating "[w]e still can't approve your request," and again listing the same reasons for denial. (*Id.*). Morton asserts that the second letter also failed to identify the decisionmaker, their qualifications, and the materials they considered. (*Id.*). Morton asserts that the letter he received one day later is unusual and appears "consistent with a biased claims handling process." (*Id.*). Morton's provider participated in a peer-to-peer review of the request with Anthem's physicians. (*Id.*). Morton asserts that the peer-to-peer review went poorly, that the medical providers for Anthem were unfriendly, argumentative, and appeared to have made up their minds to not approve the procedure. (ECF No. 45 at 5).

On May 25, 2022, Morton's provider submitted an appeal on Morton's behalf. (ECF No. 41 at 3). Anthem asserts that three of its physician reviewers ultimately reviewed all the

documentation submitted in connection with the appeal along with the initial request and decided that the surgery was not medically necessary. (*Id.*). Anthem sent Morton a letter upholding its denial on June 24, 2022. (ECF No. 45 at 6). That letter stated that Dr. Lu "filed an appeal on your behalf for authorization to have surgery to remove a gel pad between your neck bones and replace it with a new gel…" (*Id.*). Morton asserts that this letter still mischaracterized the surgery because Dr. Lu was not proposing to remove and replace any gel pad, but to insert one for the first time. (*Id.*). The letter also reiterated the prior reason for denial, that the "notes show that [Morton] had neck surgery in the past," which "joined the bones in [his] neck," and that "[y]ou cannot have a gel pad replaced if your neck bones are joined together." (*Id.*). Morton asserts that this letter, unlike the prior ones, identified two decisionmakers. (*Id.*). But neither are neurological surgeons. (*Id.*). One was a family medicine doctor and the other specialized in internal medicine. (*Id.*).

Morton asserts that he prepared a detailed letter on July 29, 2022, appealing the decision, and sent it to Anthem via FedEx. (*Id.* at 7-8). Anthem asserts that it is unable to confirm that it ever received the letter. (ECF No. 48 at 3-4). It also points out that the FedEx tracking document states that the letter was delivered to a "residence," although the address to which it was delivered is Anthem's Denver, Colorado address.[1] (*Id.*). Morton points out that the FedEx tracking document shows that the letter was delivered on August 8, 2022. (ECF No. 45 at 8). But Anthem did not respond to this letter and the letter does not appear in the file that Anthem produced to him in connection with this case. (*Id.*).

Morton called Anthem after not hearing back, but was informed that his case had been closed. (*Id.* at 9). Anthem's records show that the case was closed as of June 24, 2022. (ECF No. 45 at 9). Morton claims that he asked the representative if they had received the letter, but the representative did not answer yes or no. (*Id.*). Morton asserts that the representative told him

---

[1] Anthem also argues that the tracking document is not authenticated because Morton did not include a declaration with his motion. (ECF No. 48 at 4). Morton acknowledges this in his erratum, attaching the declaration and explaining that his failure to do so was error. (ECF No. 52). Given the fact that Morton filed the declaration, the Court declines to question the authenticity of the tracking document.

1  that a team leader would call Morton back in the next twenty-four to forty-eight hours, but
2  Morton never received a call. (*Id.*). Morton ultimately traveled to Germany, where surgery was
3  much cheaper, in the fall of 2022 to undergo the recommended surgery, paying $60,000 out of
4  pocket. (*Id.*). Morton filed his initial complaint in this action on June 20, 2023, in state court.
5  (ECF No. 1 at 2).

6  Anthem argues that the Court should employ an abuse of discretion standard of review
7  when considering its decision to deny Morton's claim because the healthcare plan gave it
8  "complete discretion to determine the administration of [Morton's] benefits." (ECF No. 41).
9  Morton argues that, despite the discretionary authority the plan gave Anthem, the Court should
10 decide the case with a *de novo* standard because Anthem has a conflict of interest in both
11 administering the plan and paying benefits and because Anthem engaged in flagrant violations of
12 the ERISA procedural requirements. (ECF No. 45). In the alternative, Morton proposes that the
13 Court should defer deciding the standard of review, and allow the parties to engage in limited
14 discovery regarding the alleged procedural irregularities in handling Morton's claim and whether
15 those alleged violations were flagrant. (*Id.* at 15-16). Anthem opposes that proposal. (ECF No.
16 48 at 6-7).

17 **II.     Discussion.**

18      ***A.     Motions to determine the standard of review.***

19 The primary purpose of the Employee Retirement Income Security Act of 1974
20 ("ERISA") is "to provide a method for workers and beneficiaries to resolve disputes over benefits
21 inexpensively and expeditiously." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472 (9th Cir.
22 1993) (internal quotations and citations omitted) (overruled on other grounds by *Abatie v. Alta
23 Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)). Generally, district courts review an ERISA
24 plan administrator's decision to deny benefits *de novo*, "unless the benefit plan gives the
25 administrator discretionary authority to determine eligibility for benefits or to construe the terms
26 of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan "does
27 confer discretionary authority as a matter of contractual agreement, then the standard of review
28

shifts to abuse of discretion," which is a "more lenient" standard of review." *Abatie*, 458 F.3d at 963 (emphasis removed).

The appropriate scope of discovery in ERISA cases "is directly related to the standard of review employed by the Court." *Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 647 (E.D. Cal. 2009). Under *de no novo* review, the district court may consider evidence outside of the administrative record. *Abatie*, 458 F.3d at 969-70. Abuse of discretion review is typically confined to the administrative record. *Id.*

However, even if the plan confers discretionary authority, the "court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest." *Id.* In cases where procedural irregularities are alleged, typically the standard of review will be abuse of discretion unless the violations are flagrant. *Id.* at 972-73. When procedural irregularities are apparent in an administrator's determination, a court may consider extrinsic evidence to determine the effects of the irregularity. *Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1041 (9th Cir. 2014). It may also take additional evidence when the irregularities have prevented full development of the administrative record. *Abatie*, 458 F.3d at 973. A failure to comply with procedural requirements ordinarily will not alter the standard of review unless the irregularities are substantial. *Id.* at 971 (explaining that irregularities must be wholesale and flagrant for *de novo* review to apply).

Here, the Court is without sufficient information to decide the standard of review. For example, it is not clear what exactly happened at the peer-to-peer meeting that Morton asserts went poorly. Additionally, Morton sent what he asserts is a second-level appeal to Anthem at its address, but Anthem was unable to confirm that it ever received the letter.

While Anthem argues that Morton has provided no authority to support his request that the Court allow limited discovery before deciding the standard of review, Morton points to at least two court cases in this district that have permitted limited discovery in ERISA cases before determining the standard of review. *See Medford v. Metropolitan Life Ins. Co.*, 244 F.Supp.2d 1120, 1123 (allowing certain discovery to proceed because "the court cannot determine at this early stage of the litigation what standard of review should be applied to the determination of this

action"); *see Burris v. First Reliance Standard Life Ins. Co.*, No. 2:20-cv-00999-APG-BNW, 2021 WL 12302192, at *3-5 (D. Nev. June 2, 2021) (allowing certain discovery related to procedural irregularities to proceed before determining the standard of review). Additionally, Anthem's argument that Morton must first show that Anthem behaved flagrantly before seeking discovery about that flagrant behavior places Morton in an impossible position. Moreover, Morton has alleged that Anthem breached its fiduciary duty and that Anthem breached the terms of the plan. (ECF No. 27). So, any discovery regarding whether Anthem flagrantly violated ERISA is both relevant and proportional to Morton's allegations. *See* Fed. R. Civ. P. 26(b)(1).

The Court declines to decide the standard of review. Instead, it will allow for a limited, forty-five-day period of discovery. That discovery is limited to whether Anthem's decision contained procedural irregularities, the effects of those irregularities, and whether those procedural irregularities are substantial or flagrant. The Court denies the motions to determine the standard of review without prejudice so that the parties may re-file them after conducting this discovery.

**B.    *Motions to seal.***

Morton seeks to seal the errata to his motion to determine the standard of review. (ECF No. 53). He also seeks to seal his reply in support of his motion. (ECF No. 55). The sole reason that Morton seeks to seal the documents is that Anthem has marked them as confidential. But Anthem has not provided a declaration establishing sufficient justification for sealing each document at issue as required by the Court's supplemental protective order. (ECF No. 34). That order provides the following:

> The fact that the Court has entered the instant stipulated protective order and that a party has designated a document as confidential pursuant to that protective order does not, standing alone, establish sufficient grounds to seal a filed document. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). If the sole ground for a motion to seal is that the opposing party (or non-party) has designated a document as confidential, the designator shall file (within seven days of the filing of the motion to seal) either (1) a declaration establishing sufficient justification for sealing each document at issue or (2) a notice of withdrawal of the

|   |   |
|---|---|
| | designation(s) and consent to unsealing. If neither filing is made, the Court may order the document(s) unsealed without further notice. |

(*Id.* at 3).

Because the motions themselves do not provide sufficient justification to seal the documents at issue, the Court denies them. However, the Court will maintain the documents at issue (filed at ECF Nos. 56 and 57) under seal for thirty days to give Anthem time to either: (1) move to seal the documents, which motion must establish sufficient justification for sealing the documents; or (2) file a notice of withdrawal of the confidentiality designations and consent to unsealing. If the Court receives neither, it will order the documents to be unsealed.

### C. Scheduling.

Because the Court has denied the motions to determine the standard of review without prejudice so that the parties may file them again after conducting discovery, and in the interest of having concrete deadlines, the Court also modifies the parties' discovery plan. The Court does not modify the deadline for Anthem to produce the administrative record or the deadline for the parties to engage in good faith settlement, because those deadlines have passed.

**IT IS THEREFORE ORDERED** that Anthem and Morton's motions to determine the standard of review (ECF Nos. 41, 45, 47) are **denied without prejudice.**

**IT IS FURTHER ORDERED** that the parties shall have until **March 13, 2025,** to conduct discovery regarding the appropriate standard of review as discussed in this order.

**IT IS FURTHER ORDERED** that Morton's motions to seal (ECF Nos. 53, 55) are **denied.**

**IT IS FURTHER ORDERED** that Anthem shall have until **February 26, 2025,** to file a motion to seal the documents filed at ECF Nos. 56 and 57 or to file a notice of withdrawal of the confidentiality designations and consent to unsealing. If the Court receives neither by February 26, 2025, it will order the documents to be unsealed.

///

**IT IS FURTHER ORDERED** that the below deadlines shall govern this case:

| | |
|---|---|
| Close of limited discovery period: | March 13, 2025 |
| Deadline for motions regarding standard of review: | April 14, 2025 |
| Merits briefing: | |
|     Plaintiff's opening brief: | August 14, 2025 |
|     Defendant's response: | September 15, 2025 |
|     Plaintiff's reply: | October 15, 2025 |

DATED: January 27, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE